IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

LBI INVESTMENTS, INC.               )
                                    )
          Plaintiff,                )
                                    )
v.                                  )          Civil Action No.  05-74387
                                    )
LEXINGTON INTERNATIONAL, LLC,       )          Hon. Arthur J. Tarnow
and DAVID MICHAELS,                 )
                                    )
          Defendants.               )
                                    )


## BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS


Mark R. James (P54375)
Williams, Williams, Rattner & Plunkett, P.C.
380 N. Old Woodward, Suite 300
Birmingham, MI  48009
(248) 642-0333

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

CONTROLLING/MOST PERTINENT AUTHORITY...................................................... iii

ISSUE PRESENTED........................................................................................................ iv

INTRODUCTION ..............................................................................................................1

FACTS ................................................................................................................................1

ARGUMENT.......................................................................................................................5

      1.    LBI's Complaint Sufficiently States Claims for
           Slander and Libel. .......................................................................................5

      2.    At Most, the Court Should Allow LBI to Amend
           Its Complaint...............................................................................................7

      3.    The Court Should Deny the Motion as to LBI's
           Claim for Tortious Interference. .................................................................8

CONCLUSION....................................................................................................................9

**TABLE OF AUTHORITIES**

Foman v. Davis, 371 U.S. 178 (1962) ..................................................................8

Health Call of Detroit v. Atrium Home & Health Care Services, Inc., ...........................9
  268 Mich. App 83; 706 N.W.2d 843 (2005)

Hollowell v. Career Decisions, Inc., 100 Mich. App. 561; 298 N.W.2d 574 (1980) .......................

Parker v. Aetna Life & Casualty, 791 F. Supp. 175 (W.D. Mich. 1991).........................8

Pierce v. Daniel, Seymour & Grossman, P.C., No. 199727,
  1998 Mich. App. LEXIS 446 (1998) ...................................................................8

Pursell v. Wolverine-Pentronix, Inc., 44 Mich. App 416; 205 N.W.2d 504 (1973).......................7

Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc., 197 Mich. App. 48;
  495 N.W.2d 392 (1992) ..............................................................................6, 8

Simmons v. Telcom Credit Union, 177 Mich. App. 636; 442 N.W.2d 739 (1989) .......................8

Smith v. Primco Management Corp., No. 193207, 1997 Mich. App. LEXIS 748 (1997) .............7

Swenson-Davis v. Martel, 135 Mich. App. 632; 354 N.W.2d 288 (1984).......................6

**STATUTES**

Fed. R. Civ. P. 15(a) ..................................................................................8

## CONTROLLING/MOST PERTINENT AUTHORITIES

Foman v. Davis, 371 U.S. 178 (1962)

Pursell v. Wolverine-Pentronix, Inc., 44 Mich. App 416; 205 N.W.2d 504 (1973)

Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.,  197 Mich. App. 48;
 495 N.W.2d 392 (1992)

Swenson-Davis v. Martel, 135 Mich. App. 632; 354 N.W.2d 288 (1984)


Fed. R. Civ. P. 15(a)

## **ISSUE PRESENTED**

Whether plaintiff has stated claims upon which relief can be granted.

## Introduction

The Court should deny Defendants' Motion to Dismiss because (1) the allegations made by Plaintiff LBI Investments, Inc. ("LBI") in its Complaint are sufficiently specific to maintain its claims and (2) even if the Court were to require more specificity in the allegations, LBI should be allowed to amend its Complaint consistent with such a ruling. This is not a situation where a LBI has asserted only general allegations regarding defendants' defamatory statements. LBI has specifically alleged that those statements include (a) misrepresenting the manner in which LBI's product is constructed; (b) misrepresenting the manner in which LBI's product operates; (c) asserting that LBI has attempted to mislead consumers; and (d) misrepresenting the nature of the lasers used by LBI vis a vis the lasers used by Lexington. (Complaint at ¶ 12.)

Although all of the claims are well pled, LBI would rather not waste the Court's and its time arguing about whether it has identified the defamatory statements with sufficient specificity under Michigan law. To that end, LBI requests that it be allowed leave to amend its Complaint to supplement at least its libel claim regarding the exact statements by defendants that underlie LBI's claims.

## Facts

LBI is in the business of marketing and selling handheld devices that utilize low level laser technology to, among other things, improve the appearance of the user's hair. Defendants Lexington International, LLC ("Lexington) and David Michaels ("Michaels"), its Managing Director[1], are also in the business of manufacturing and selling a device called the Hairmax LaserComb, which utilizes low level laser technology purportedly to improve the appearance of the user's hair.

---

[1] Michaels also is listed in various sources as Lexington's President and Founding Member.

1

Hairmax is a well known name in the laser hair industry. Lexington maintains a web site at www.hairmax.com, and the site contains a User Forum for customers and potential customers to ask questions and discuss various topics with Lexington and other users. Defendants have used this Forum to make numerous false and defamatory statements about LBI and its products, the Photonic Laser 300, 500, 700 and 900. The nature of these statements is particularly damaging to LBI because they are not merely published once in a printed publication, but are continuously published and available on Lexington's web site.

On May 24, 2005, "MikeA" from Lexington made the following statements in the Hairmax Forum in response to a question from a consumer: "We purchased [a Photonic device] and it is an inferior device. The laser power measured under 1 milliwat and ours is 4-5 mW with 9 laserbeams. Essentially, our LasrComb [sic] gives 9 times more laser energy." (Ex. A, p. 1.) These are all false and misleading statements.

Both Lexington and LBI use class 3a lasers in their products, which by definition have a power output of between 1 milliwat ("mW") and 5 mW. (See Ex. B, pp 3-4, 12/30/01 Forum post by Michaels sating that Hairmax uses class 3a lasers; Ex. C, p. 2, Harvard University web publication showing that Class 3a lasers produce between 1 mW and 5 mW of energy; Ex. E, Affidavit of Richard Laurent, ¶ 3; Ex. F, printout from the Photonic web site, p. 1.) Thus, it is false that the lasers in the Photonic products have a power output of less than 1 mW, and it is equally false that there is any difference between the lasers used in the Photonic products and Hairmax's product. Any particular class 3a laser may measure at between 1 mW and 5 mW, but it is patently false to state that Lexington's lasers have power outputs of 4-5 mW while LBI's have outputs of less than 1 mW.

Also false are the statements that the Hairmax product has "9 laserbeams" and produces "9 times more laser energy" than LBI's product. (Ex. A, p. 1.) The Hairmax product does not

2

have 9 individual lasers, it merely reflects <u>one</u> laser module to give the appearance of 9 lasers. In contrast, LBI's products utilize 3, 5, 7 or 9 individual laser modules, not a single reflected or split laser beam. (Ex. E, ¶ 4; Ex. F, p.1.) The reality is that LBI's product has up to 9 laser modules and Lexington's has only 1, not the other way around as Lexington falsely states on its website.

Lexington published additional false and defamatory statements in the Hairmax Forum on June 8, 2005. "Sonia" from Lexington wrote on that day that "[e]ach beam [in Hairmax's product] is 4-5 times greater in power than each beam of the Photonic Research's [sic] product." (Ex. A, p. 2-3.)[2] As discussed above, this is plainly not true. Lexington continues to defame LBI in this posting by suggesting that LBI is "just trying to <u>scam the consumer</u> by producing a low power imitation" of Hairmax's product. (<u>Id.</u>, p. 3, emphasis added.) Such an inflammatory statement in response to consumer inquiries, especially based on false information, is clearly intended to harm LBI.

Lexington continued to make false, defamatory statements in another posting on August 9, 2005, which compares the Hairmax product with LBI's Photonic product and product called the Lasertron Brush. That posting claims that the Photonic Laser contains "a very low powered laser," and that its specifications "state that they use a class 1a laser," which is "the weakest laser classification." (Ex. D, p. 2.) Again, all of this is false. The specifications for the Photonic products do not state that it uses a class 1a laser. (Ex. E, ¶ 5; Ex. F, p.1.) LBI uses the exact same class of laser that Lexington uses, 3a. (Ex. E, ¶ 3; Ex. B, pp 3-4.)

The August 9 posting goes farther into the realm of fiction when it states that the Photonic product utilizes "low power laser diodes that are then split using a bundle of plastic

---

[2] In a later posting, "Sonia" makes clear that she is associated with Lexington when she states: "<u>Here at Lexington Int'l</u> we give honest, loyal and commendable responses to our viewers, potential customers and our very own users." (Ex. A, p. 6, emphasis added.) This posting is both telling and ironic given the misleading posts by Sonia and others at Lexington.

3

fiber optic cable." (Ex. D, p. 2.) The posting then proceeds to discuss various problems associated with using fiber optics in this application. (Id.) The problem with these statements is that it is a complete fabrication that LBI uses fiber optics in its products. LBI does not and has never utilized fiber optics in any way in any of its products. (Ex. E, ¶ 6.) As clearly stated on the Photonic web site, the Laser 900 "utilizes nine(9) independent self contained cold beam lasers class 3A . . . ." (Ex. F, p. 1.)[3]

The August 9 posting then repeats Lexington's plainly false mantra that "[e]ach of our 9 beams are approximately 8 times more powerful than the beams produced by the other two devices." (Ex. D, p. 2.) This misrepresents both LBI's product and Lexington's.

On September 8, 2005, Lexington's Sonia returned to the Forum to make more false, defamatory statements regarding LBI's product. (Ex. D, pp 4-5.) She began that posting with the claim that Photonic's head-to-head comparison with the LaserComb on the Photonic website was "an attempt to mislead consumers." (Id., p. 4.) She apparently is confusing LBI with Lexington, the only party in this dispute attempting to mislead consumers. Sonia claims that the Photonic product "is not delivering the proper dosage of laser light," a false, unsupported statement. (Id.) She then falsely claims again that Hairmax's lasers are 3 to 5 times stronger than the lasers utilized by Photonic. (Id.) (Query as to why their lasers were only 3-5 times more powerful on September 8 when they were purportedly 8 times more powerful on August 9.)

The September 8 posting also repeats the fictional fiber optics claim, and then asserts that Photonic uses fiber optics "to distribute ONE laser beam into 9 separate beams," which reduces the efficacy of the product. (Id.) Lexington continues to have apparent trouble distinguishing between Photonic and Hairmax, since it is Hairmax that dilutes its laser by reflecting it to appear to be nine lasers, and Photonic that actually uses multiple laser modules.

---

[3] The Laser 300, 500 and 700 utilize three, five and seven lasers, respectively.

4

The September 8 posting also states that Photonic's lasers measure at less than 1 mW, "and some beams were even an order of magnitude weaker than that." (Id.)  Again, both Lexington and Photonic use class 3a lasers with power outputs between 1 mW and 5 mW.  (See Ex. B, pp 3-4; Ex. C, p.2; Ex. E, ¶ 3; Ex. F, p. 1.)

In addition to all of the above defamatory statements, prospective customers have informed LBI on multiple occasions since February 2005 that when they contacted Lexington by telephone to discuss the two companies' products, Lexington has made false, derogatory statements to the customers regarding the Photonic products and LBI.  These statements include (a) that the Photonic products utilize lasers that are not as powerful as the lasers utilized by Hairmax; and (b) that LBI is attempting to mislead customers.

**Argument**

**1.     LBI's Complaint Sufficiently States Claims for Slander and Libel.**

Under Michigan law, the following are the elements of a defamation claim: (1) a false and defamatory statement; (2) unprivileged communication to a third party; (3) fault amounting to at least negligence; and (4) either actionability of the statement irrespective of special harm or the existence of special harm.  Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc., 197 Mich. App. 48, 51; 495 N.W.2d 392 (1992).  LBI has pled all of these elements.

LBI's Complaint alleges false and defamatory statements by defendants.  (Complaint, ¶¶ 11-14.)  "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  Swenson-Davis v. Martel, 135 Mich. App. 632, 635; 354 N.W.2d 288 (1984) (citations omitted).  The statements at issue, made to potential LBI consumers, both harmed LBI's reputation and would tend to deter third persons from dealing with LBI.

5

2:05-cv-74387-SFC-DAS   Doc # 5   Filed 02/28/06   Pg 11 of 15   Pg ID 82

LBI also has alleged that defendants' statements were not privileged, and that defendants made the defamatory statements with the intent of injuring LBI's business, or were at least negligent in making the statements. (Complaint, ¶¶ 16, 22.) Further, LBI's Complaint alleges both that defendants statements are defamation per se, and that LBI has suffered actual damages as a result of the defamatory statements. (Complaint, ¶¶ 17-20, 23-26.) Under Michigan law, "[s]lander (libel) per se exists where the words spoken (written) are false and malicious and are injurious to a person in his or her profession or employment." Swenson-Davis, 135 Mich. App. at 636 (citation omitted).

Defendants have moved to dismiss LBI's Complaint only on the ground that LBI has not satisfied the first element of a defamation claim because it allegedly has not identified the defamatory statements with sufficient specificity. (Brief in Support of Defendants' Motion to Dismiss ("Dfts' Br."), p. 3.) LBI disputes this argument based on the fact that it has not made mere conclusory allegations that defendants have defamed LBI. The Complaint contains substantive allegations about the nature of defendants' defamatory statements, including false statements to consumers that (1) misrepresent the manner in which the Photonic products are constructed; (2) misrepresent the manner in which the Photonic products operate; (3) claim that LBI has attempted to mislead consumers; and (4) misrepresent the nature of the lasers used in the Photonic products compared with the lasers used by Lexington. (Complaint, ¶ 12.)

The sufficiency of LBI's allegations is particularly true with respect to its slander claim, as Michigan law does not require the same specificity for slander claims as for libel claims. Pursell v. Wolverine-Pentronix, Inc., 44 Mich. App. 416, 422; 205 N.W.2d 504 (1973). The Pursell court made this point clear: "Due to the fact that a slanderous statement cannot be retained verbatim in many instances since it is spoken, we hold that it is sufficient if the complaint sets out the substance of the alleged slander and it is not necessary to recite the exact

6

words used." Id.; accord Hollowell v. Career Decisions, Inc., 100 Mich. App. 561, 574; 298
N.W.2d 915 (1980) (citing Pursell); Smith v. Primco Management Corp., No. 193207, 1997
Mich. App. LEXIS 748, *7-8 (July 15, 1997) (citing Pursell) (Ex. G). The allegations in LBI's
Complaint satisfy this standard. The allegations are not mere conclusions of defamatory
statement, but state the specific nature of defendants' statements, e.g., that LBI has attempted to
mislead consumers.

### 2.     At Most, the Court Should Allow LBI to Amend Its Complaint.

As stated above, although LBI maintains that all of its claims are well pled, we would
rather not waste the Court's time arguing about whether the Complaint has identified the
defamatory statements with sufficient specificity under Michigan law. To that end, if the Court
finds that any of the allegations in the Complaint require more specificity, LBI requests that it be
granted leave to amend its Complaint regarding the exact statements by defendants that underlie
LBI's claims.[4] The specifics set forth in this brief and in the attached exhibits clearly support the
defamation claims, and would be incorporated into an Amended Complaint.

The Federal Rules of Civil Procedure provide that leave to amend pleadings "shall be
freely given when justice so requires." Fed. R. Civ. P. 15(a). This rule has been echoed by the
United States Supreme Court, which has stated that leave to amend should be freely given absent
evidence of undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the
opposing party or futility of amendment. Foman v. Davis, 371 U.S. 178, 182 (1962). None of
these bases for denial are present here.

Moreover, both federal courts and Michigan state courts routinely allow plaintiffs to
amend pleadings to add specificity to defamation claims. E.g., Parker v. Aetna Life & Casualty,
791 F. Supp. 175, 178 (W.D. Mich. 1991) (granting motion for leave to amend defamation

---

[4] To ensure compliance with the Court's procedural rule, LBI will file a provisional Motion for Leave to Amend
prior to the hearing on the instant motion.

claim); <u>Royal Palace</u>, 197 Mich. App. 48, 57-58 (remanding with instruction that plaintiffs be given an opportunity to amend); <u>Pierce v. Daniel, Seymour & Grossman, P.C.</u>, No. 199727, 1998 Mich. App. LEXIS 446, *4-6 (Sept. 18, 1998) (reversing denial of motion to amend, and remanding so that with plaintiffs could amend complaint) (Ex. H.)

It is misleading for defendants to cite to <u>Simmons v. Telcom Credit Union</u>, 177 Mich. App. 636, 644; 177 Mich. App 636 (1989), as support for refusing to allow leave to amend defamation allegations.  While the <u>Simmons</u> court declined to remand with leave to amend, it did so because there was nothing in the record indicating that the plaintiff had requested leave to amend.  <u>Id.</u>  This plainly distinguishes <u>Simmons</u> from this case, where LBI has provided additional details regarding the defamatory statements at issue and has requested leave to amend its Complaint if the Court believes such amendment is necessary.

**3.      The Court Should Deny the Motion as to LBI's Claim for Tortious Interference.**

Defendants' motion regarding LBI's claim for tortious interference should be denied. Defendants claim without support that this claim must fail "for the same reason" they believe the defamation claims must fail, <u>i.e.</u> that LBI has not identified the defamatory statements at issue with enough specificity.  (Dfts' Br., p. 13.)  That leap in logic is without support.  A claim for tortious interference does not require the same specificity regarding the alleged interference by a defendant that a claim for libel requires regarding a defamatory statement.

The elements of a claim for tortious interference with business expectancy are (1) a valid business relationship or expectancy; (2) the defendant's knowledge of the business relationship or expectancy; (3) intentional interference with the relationship or expectancy causing a termination of same; and (4) resulting damages.  <u>Health Call of Detroit v. Atrium Home & Health Care Services, Inc.</u>, 268 Mich. App. 83, 90; 706 N.W.2d 843 (2005) (citations omitted).

8

LBI has pled all of these elements. (Complaint, ¶¶ 28-31.) As such, defendants' motion should be denied as to this claim.

Even if the tortious interference claim were as inexorably linked to the defamation claims as defendants suggest, the Court should deny the motion as to this claim. This is true because either (1) LBI's claims for slander and libel should survive defendants' motion for the reasons discussed above or (2) the Court should allow LBI to amend its Complaint to add more specifics to the defamation claims.

Defendants' citation to cases involving privileged speech is not on point. (See Dfts' Br., p. 13.) There can be no legitimate claim that defendants were protected by a privilege to make false statements to consumers regarding the construction and operation of the Photonic products, or to claim that LBI is trying to "mislead" or "scam" consumers.

<u>**Conclusion**</u>

For all of the foregoing reasons, Plaintiff LBI Investments, Inc. respectfully requests that the Court deny Defendants' Motion to Dismiss.

WILLIAMS, WILLIAMS, RATTNER & PLUNKETT, P.C.

By:   s/ Mark R. James (P54375)
      Mark R. James (P54375)
      Attorneys for Plaintiff
      380 N. Old Woodward Ave., Suite 300
      Birmingham, MI 48009
      (248) 642-0333

Dated: February 28, 2006

9

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2006, I electronically filed the foregoing paper with the Clerk of the Court using the ECF, which will send notification to the following:

Herschel P. Fink
Honigman, Miller
660 Woodward Ave., Suite 2290
Detroit, MI 48226-3583

s/ Mary Aiello